IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LOS CANGRIS, et. al.,

    Plaintiffs,

        v.                        CIVIL NO.: 10-1349 (JAG)

UMG RECORDINGS, INC., et. al.,

    Defendants.

**OPINION AND ORDER**

Pending before the court is a motion to intervene filed by five applicants for intervention: Ángel Martínez Alicea, Reynaldo Colón Vega, Raúl Rivera Roldán, Freddy Montalvo, and Glenn Turley ("applicants" or "proposed intervenors") (Docket No. 67). Plaintiffs and defendants have filed responses in opposition. (Docket Nos. 72, 82). For the reasons set forth below, the motion is hereby denied.

    **I.**    **BACKGROUND**

        **A.**    **Plaintiffs' Claims and Allegations**

The instant case was filed on April 27, 2010 by Ramón Ayala Rodríguez ("Ayala"), a musical artist known as "Daddy Yankee," and his publishing and recording companies, Los Cangris, Inc., and El Cartel Records, Inc., respectively (collectively, "plaintiffs"), against Universal Music Distribution Corporation ("Universal") and UMG Recordings, Inc., d/b/a Universal Music Latin America ("UMG") ("defendants"). At the heart of the dispute are an exclusive license agreement and a distribution agreement that plaintiffs and

UMG executed on January 10, 2005.  (Docket No. 21, ¶ 3.5).  According to the amended complaint, the license agreement, between Ayala and UMG, covered four of Ayala's albums: Barrio Fino, El Cangri.com, Los Jonrones, and El Cartel II.  (Docket No. 21, ¶¶ 3.4-3.5).   The distribution agreement, between Los Cangris and UMG, was for the exclusive distribution of those same four albums.  Id.  The License agreement was to terminate five years after the date of delivery by Ayala of all the master recordings and corresponding production parts of the aforementioned four albums.  (Docket No. 21, ¶ 3.6).  The distribution agreement was for a term of three years.  (Docket No. 21, ¶ 3.7).  On March 21, 2008, the parties modified only the distribution agreement to include three additional albums, including Talento del Barrio.  (Docket No. 21, ¶ 3.10).   The proposed intervenors' claims concern one song from the album Talento del Barrio.  (Docket No. 21, ¶ 5).

On February 3, 2010, plaintiffs allegedly notified defendants that the term of the agreements had expired and requested a detailed status of the remaining inventory up to January 10, 2010 and an audit of the royalty statements.  (Docket No. 21, ¶ 3.14).  The parties agreed to a six-month sell-off period of the four albums covered by the agreement.  (Docket No. 21, ¶ 3.14).  The next day, however, defendants allegedly retracted from the sell-off agreement and claimed that the license and distribution agreements did not expire until March 31, 2013.  (Docket No. 21, ¶ 3.16).  Plaintiffs allege that defendants have continued to copy, distribute, manufacture, disseminate, and/or otherwise exploit plaintiffs'

musical works from Barrio Fino in violation of plaintiff's copyrights for those works. (Docket No. 21, ¶ 3.17).[1]

With respect to Talento del Barrio which, once again, is the only album related to the proposed intervenors' claims, plaintiffs seek a declaratory judgment that both the license and distribution agreements have expired and also seek rescission of said agreements. (Docket No. 21, ¶¶ 4.1-4.2, 6.1-6.2). Plaintiffs also bring a claim for collection of monies and breach of contract, claiming that defendants underreported and underestimated royalties due to them under the licensing and distribution agreements. (Docket No. 21, ¶¶ 5.1-5.5).

### B.     Proposed Intervenors' Claims and Allegations

The five individuals who wish to intervene are all music producers who allege that they jointly composed the song "Salgo pa la Calle," which appeared on Ayala's album Talento del Barrio. (Docket No. 67, ¶ 5). The proposed intervenors (incorrectly identified in their motion as "third party plaintiffs") each entered into separate producer agreements and management agreements with Francisco Saldaña ("Saldaña"), a producer known as "Luny," who is the principal of LT Benjamin Records and Mas Flow, Inc.. (Docket Nos. 67, ¶ 4; 67-1, pp. 1-12; 68-1, p. 3, ¶ 3).[2] The producer agreements granted Mas Flow "all right title and interest" in the copyrights of the masters of each song that applicants produced, but excluded the copyrights in the compositions themselves. (Docket No. 68-1,

---

[1] Plaintiffs do not allege that they hold copyrights for the works contained in any of the other albums covered by the two agreements. (See Docket No. 30)
[2] Neither the proposed third-party complaint nor the motion to intervene indicates the date that said agreements were executed.

p. 2, ¶ 5). Applicants produced one album and at least forty-five other songs pursuant to this agreement. (Docket No. 68-1, p. 5, ¶ 16). One of those songs was "Salgo pa la Calle."

Saldaña and his companies had, in turn, a joint venture agreement with Machete Music, a division of UMG Recordings, according to which the latter would distribute albums produced by LT Benjamin Records and pay Saldaña royalties and profit advances. (Docket No. 67, ¶ 1-2). That agreement was executed on August 13, 2007. <u>Id.</u> Applicants' proposed third-party complaint (attached as an exhibit to their motion to intervene) also references a distribution agreement between LT Benjamin Records and Machete Music signed in 2004 and a profit sharing agreement between those same parties signed in April of 2007. (Docket No. 68-1, p. 20, ¶ 71-72). Applicants appear to allege that, pursuant to those agreements, Saldaña was responsible for paying a portion of the royalties from Machete Music to his various producers.

Applicant Raúl Rivera Roldán (also referred to in the complaint as "Raúl Roldán Rivera") also alleges that, while working with Mas Flow, he wrote and produced two of the songs that appeared on an album by the musical duo known as "Wisin y Yandel," composed of Juan L. Morera Luna and Llandel V. Malave, who are also named as defendants in the proposed third-party complaint. (Docket No. 68-1, ¶¶ 19-22). He alleges that those works appeared on Wisin y Yandel's 2005 album Pa'l Mundo, and that he is thus owed royalties from those album sales. (Docket No. 68-1, p. 6, ¶ 23, p. 19, ¶¶ 66-70).

With respect to "Salgo pa la Calle"—once again, the only musical composition relevant to both applicants' and plaintiffs' claims—applicants allege that the song was intended to be released on their album "Erre XI," which was created pursuant to the joint

venture agreement between Saldaña and Machete Music. (Docket No. 68-1, pp. 4-5, ¶¶ 10, 14). However, that song "ended up somehow" as track number 7 on Ayala's album, Talento del Barrio. (Docket No. 68-1, p. 4, ¶ 10). On March 2, 2012, applicants were granted copyright registration for the song "Salgo pa la Calle." (Docket No. 68-1, ¶ 13). Applicants allege that Ayala is liable for infringement of that copyright. (Docket No. 68-1, ¶ 10).

In addition to their copyright infringement claim against Ayala for "Salgo pa la Calle," the proposed third-party complaint contains a lengthy, and rather confusing, litany of copyright and contract claims against the following twelve defendants: LT Benjamin Records, Saldaña, Victor Cabrera (Saldaña's production partner, known as "Tunes"), Mas Flow, Machete Music/UMG Recordings, Ayala, Los Cangris, El Cartel Records, Blue Kraft Publishing, White Kraft Publishing, Universal, and Wisin y Yandel. In sum, applicants' claims relate to Saldaña's alleged breach of the producer and management agreements, copyright claims for the songs they produced for Erre XI, and claims for royalties due from the songs they produced for Saldaña. Applicants also allege that they are entitled to damages for Machete's breach of its joint venture agreement with Saldaña under a third party beneficiary theory. In total, the proposed third-party complaint contains twelve separately pleaded claims.

## II.    ANALYSIS

Applicants move to intervene as of right and permissively under Federal Rule of Civil Procedure 24(a) and 24(b), respectively. Plaintiffs and defendants have all opposed

intervention, and, largely for the reasons set forth in those oppositions, the court finds that intervention is unwarranted.

### A.      Intervention as of Right

To intervene as of right under Rule 24, an applicant for intervention must show that: (1) the applicant has an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may as a practical matter impair or impede the absentee's ability to protect that interest, (3) the existing parties cannot adequately represent that interest; and (4) that the motion is timely.  Fed. R. Civ. P. 24(1)(2).  The applicant must "fulfill all four of these preconditions.  The failure to satisfy any one of them dooms intervention."  Pub. Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998).  The First Circuit has noted that this standard is somewhat imprecise, and that the "inherent imprecision . . . dictates that [the requirements] 'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation."  Id. (citing United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984).  While applicants may be able to demonstrate an interest and fulfill the first requirement, they clearly do not fulfill the second and third preconditions.

With respect to that first element, applicants argue that they have an interest in a sum of money that defendants have deposited with the court, which is the amount that plaintiffs allege defendants improperly withheld from their royalty payments.  (See Docket Nos. 57-59).  Whether or not plaintiffs are entitled to these funds, however, depends on whether UMG did in fact improperly withhold those funds as per the license and distribution agreements, which are the real subject of this litigation.  Applicants' interest in

those agreements is, at best, tenuous.  Out of their numerous claims against the defendants named in their proposed third-party complaint, only their claims related to "Salgo pa la Calle" have any relevance to the agreements between plaintiffs and defendants. Applicants' own characterization of this interest shows how tenuous it really is.  They argue that they "have a direct interest in a portion of the monies in controversy in the present action [because their] royalties for 'Salgo Pa La Calle' are dependent on the amount of royalties paid to out by [sic] UMG to other parties, as they are paid by LT [Benjamin Records] and LT's royalties will depend on the deductions UMG takes."  (D.E. 67, p. 9-10).  This argument makes it difficult to understand why applicants' claim to royalties relates to the agreements between UMG and Ayala that are the subject of this action.  Based on the facts alleged in applicants' proposed third-party complaint, any royalties due to them from LT Benjamin Records derive from their contracts with Saldaña, which do not appear to have any relation to the contracts in this case.

Perhaps what applicants wish to express is that Ayala owes them royalties for his wrongful use of their song, "Salgo pa la Calle," on his album Talento del Barrio, and that any royalties that Ayala receives for the song come from UMG as per the distribution agreement.[3]  In that case, applicants might have an interest in a portion of the royalties that UMG allegedly owes Ayala—that is, the portion solely for that one song.  However, this interest is peripheral to the main issues being litigated in the present action, and is also only a small part of applicants' entire claim.  The First Circuit has noted that "the type of interest sufficient to sustain intervention as of right is not amenable to precise and

---

[3] Once again, according to plaintiffs' complaint, Talento del Barrio was not included in the licensing agreement.

authoritative definition," but that it must be read in conjunction with the next two elements, "and always in keeping with a commonsense view of the overall litigation." Pub. Serv. Co. of New Hampshire, 136 F.3d at 204 (citations omitted).  Viewed through this lens, it is evident that applicants' interest is not sufficient to warrant intervention due to their inability to satisfy the next two preconditions and the posture of the overall litigation.

With respect to the second factor, applicants argue that they will be unable to protect their interests if they are not allowed to intervene because "they will have to file an identical suit in this court."   (Docket No. 67, p. 10).   Recognizing the inherent contradiction in this argument, defendants counter that applicants can protect their interests by doing that very thing: filing a separate lawsuit.  In fact, applicants have already sought to protect their interest in "Salgo pa la Calle" and their other claims in two previous lawsuits.   The first, filed in the United States District Court for the District of Massachusetts, was dismissed for lack of personal jurisdiction over the defendants.  (See Civil No. 10-30002 (MAP), attached as Exhibit C at Docket No. 67-2).  Applicants argue that they "were not provided a fair opportunity to litigate their claims in that case," (Docket No. 67, ¶ 21), but a dismissal due to inability to exercise jurisdiction can hardly be deemed unfair.  To the extent that applicants disagree with the personal jurisdiction ruling, they may file a motion for reconsideration with the Massachusetts District Court.  In fact, they have expressed their intention to do that very thing in their motion to intervene.  (Docket No. 67, ¶ 21).  Therefore, applicants may, and currently are, protecting their interests in the Massachusetts litigation.

Additionally, if they are unable to obtain personal jurisdiction over the defendants they wish to sue in Massachusetts, there is nothing to stop applicants from filing suit in Puerto Rico, or wherever said defendants may be subject to personal jurisdiction.  In fact, on August 12, 2011, applicants did just that, by filing a complaint in this court with substantially similar claims against most of the same defendants named in their proposed third-party complaint.[4]  (See Docket No. 1 in Civil No. 11-1795 (CCC)).  On January 13, 2012, the court dismissed that complaint for applicants' failure to serve any of the defendants within the time period allowed by Federal Rule of Civil Procedure 4(m). (Docket No. 8 in Civil No. 11-1795 (CCC)).  The court's order denying applicants' motion for reconsideration of that dismissal noted that their explanation for the failure to serve process was that certain defendants were evading service, but that applicants had never made any effort to move for service by publication.  Id. at pp. 2-3.  Therefore, applicants lost their ability to protect their interests via that litigation due to their own inaction. Nevertheless, their claims were dismissed without prejudice and they are thus unhindered from bringing their claims again in a new lawsuit.  (See Docket No. 8 in Civil No. 11-1795 (CCC)).  Therefore, even if applicants may have an interest within the meaning of Rule 24(a), they cannot show that they will be unable to protect it unless they intervene in the present action.

Moreover, applicants have failed to illuminate why Ayala does not adequately represent their interests in the present action.  It is applicants' contention that they have an interest in the royalties that UMG owes Ayala for "Salgo pa la Calle."  Because Ayala is

---

[4] The complaint in Civil No. 11-1795 (CCC) excludes the claim regarding the tracks that applicant Raúl Rivera Roldán allegedly produced for the album Pa'l Mundo, and thus names all of the same defendants except for Wisin y Yandel.

suing UMG for those very royalties, it is, of course, in his interest to recover the maximum amount possible.  As already discussed, applicants may bring a separate action against Ayala to recover their portion of those royalties.  With respect to the contracts between UMG and Ayala, applicants only interest is in what Ayala may obtain from UMG for one song, "Salgo pa la Calle."  Ayala can adequately represent that interest.

This court has noted that "[t]he goal of the interest requirement [in Rule 24(a)] is to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process."  Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co., Inc., Civil No. 02-2466 (RLA), 2007 WL 1521566 at *5 (D.P.R. MAY 24, 2007) (quoting 6 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE ¶ 24.03[2][a]).  Here, the amount of complexity and time that applicants' claims would add to this action would in fact compromise efficiency and due process for the present parties.  Accordingly, Rule 24(a)'s goal would not be served by their intervention.

### B.    Permissive Intervention

Rule 24(b) provides, in pertinent part, that upon "timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  Once that threshold requirement is met, "the district court can [then] consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion."  Dagget v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999) (citing U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978)).  One factor that

the court must consider is "whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As an initial matter, it is doubtful that applicants meet even the threshold requirement for permissive intervention.  They argue that their claims "involve the same parties, contracts, and subject matter as the present case," but their proposed third-party complaint belies the inaccuracy of this assertion.  Intervenors propose to add no less than five new plaintiffs, eight additional defendants, and at least five claims that are completely unrelated to any of the songs or albums covered by the license and distribution agreements that are the subject of the instant case.  Only seven of the twelve claims contained in the proposed third-party complaint relate even tangentially to "Salgo pa la Calle."  (Docket No. 68-1, Counts 5-11).  Ayala's only claims regarding Talento del Barrio, the album containing "Salgo pa la Calle," are for unfair competition, breach of contract, rescission, and unjust enrichment.  (See Docket No. 30).  Unlike applicants, Ayala is not asserting a copyright claim regarding this song.  See id.

Even if applicants' complaint did share a common question of law or fact with plaintiffs' claims, the court, in its discretion, finds that intervention is not warranted here. As previously expressed, the number of unrelated claims and parties that applicants wish to add to this case would expand the present action exponentially.  Also, because applicants' biggest complaint is with Saldaña, who is not a party to this case, the focus of the litigation would be considerably expanded.  This would inevitably delay the adjudication of the original parties' rights, contrary to Rule 24(b)'s mandate.

### III.   CONCLUSION

Accordingly, based on the foregoing reasons, applicants' motion to intervene (Docket No. 67) is hereby DENIED.[5]

IT IS SO ORDERED.

In San Juan, Puerto Rico this 23rd day of May, 2012.

s/Marcos E. López
U.S. Magistrate Judge

---

[5] There is a split of authority as to whether a motion to intervene is a non-dispositive matter within the meaning of Federal Rule of Civil Procedure 72(a).  Compare Oakland County, et. al. v. Fed. Nat'l Mortg. Ass'n, Civil No. 11-12666, 2011 WL 4374252, at *8 n.1 (E.D. Mich. Sept. 20, 2011) (comparing motion to intervene to motions for joinder or to add parties and thus finding it similarly non-dispositive), Oregon Natural Desert Ass'n v. Bureau of Land Mgmt, No. 09-CV-00369 (PK), 2011 WL 774037, *1 (D. Or. Mar. 2, 2010) (treating motion to intervene as non-dispositive), Rhodes v. Ohse, No. 97-CV-17 (FJS), 1998 WL 809510, *1 (N.D.N.Y. Oct. 30, 1998) (holding that motion to intervene is non-dispositive because Congress did not list it at 28 U.S.C. § 636(b)(1)(A)), and United States v. Certain Real Prop. & Premises, et. al.,751 F. Supp. 1060 (E.D.N.Y. 1989) (holding that motion to intervene is not dispositive), with Newman v. Sun Capital, Inc., No. 09-CV-445-FtM-29SPC, 2010 WL 326069, *1 (M.D. Fla. Jan. 21, 2010) (deciding, without discussion, that motion to intervene is dispositive), and Miss. Power & Light Co., 621 F. Supp. 718 (S.D. Miss. 1985) (holding that motion to intervene was equivalent to involuntary dismissal and thus dispositive); compare also Stackhouse v. McKnight, 168 Fed. Appx. 464, 466 (2d Cir. 2006) (holding that a motion to intervene must be decided by district judge where existing parties have consented to magistrate judge's jurisdiction under 28 U.S.C. § 636(c), but there is no consent from proposed intervenor), with People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205, 171 F.3d 1083, 1089 (7th Cir. 1999) (holding that consent was not required for magistrate judge to rule on motion to intervene where present parties had consented).  It appears that the First Circuit has not addressed this question. The order on the present motion will not dispose "of a party's claim or defense," Fed. R. Civ. P. 72(a), because applicants are not parties to this action. Moreover, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may designate a magistrate judge to "determine" pending pretrial matters, except for certain types of motions listed in that subsection of the statute.  Motions to intervene do not appear in that list of exceptions. Therefore, the undersigned treats this as a non-dispositive motion and has accordingly issued an opinion and order.